# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

NATASHA RUIZ,

        Plaintiff,

v.                                   Case No:   6:21-cv-1628-WWB-LHP

SHARKNINJA OPERATING LLC and
WALMART INC.,

        Defendants

_____

### ORDER

    This cause came on for consideration without oral argument on the following

motion filed herein:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S SHORT-FORM DISCOVERY MOTION TO ESTABLISH A REASONABLE FEE FOR THE DEPOSITION OF DEFENDANTS' EXPERT DR. ANUP PATEL, M.D.   (Doc. No. 39)** |
| **FILED:** | **April 17, 2023** |

**THEREON** it is **ORDERED** that the motion is **GRANTED in part and DENIED in part**.

I.      **BACKGROUND**

On May 12, 2021, Plaintiff filed suit in the Ninth Judicial Circuit in and for Osceola County against Defendants SharkNinja Operating, LLC ("SharkNinja") and Walmart, Inc. ("Walmart"), alleging counts of strict liability and negligence against each Defendant and one count of breach of implied warranty against Walmart.   Doc. No. 1-1.   In sum, Plaintiff alleges that she purchased at a Walmart retail store a Nutri Ninja Pro BL450 food blender that was designed, manufactured, produced, imported, supplied, and/or distributed by SharkNinja, the blender was defective, and Plaintiff suffered severe and permanent hand injuries while using the defective blender.   *Id.*, ¶¶ 16-23.   Defendants removed the case to this Court on October 1, 2021.   Doc. No. 1.

By the present motion, Plaintiff challenges the deposition fees charged by one of SharkNinja's disclosed experts, Anup Patel, M.D.   Doc. No. 39.   Upon proper notice, Plaintiff conducted a videotaped deposition of Dr. Patel on March 14, 2023 for a period of two hours and eight minutes.   Doc. No. 39-2.   During his deposition, it became clear that the parties were not in agreement over the hourly rates for Dr. Patel – with Dr. Patel stating that he would not take less than $1,500.00 for the first deposition hour, and $1,000.00 for every subsequent hour.   *Id.*, at 96-97.   *See also* Doc. No. 53-1 (Dr. Patel's fee schedule confirming he charges "$1,500 first 60 minutes and $500 each additional 30 minutes" for videotaped depositions).

On March 15, 2023, Dr. Patel invoiced Plaintiff's counsel for a total of $2,750 ($1,500.00 for hour one, $1,000.00 for hour two, and $250.00 for the next quarter hour).   Doc. No. 39-4.

Plaintiff now contends that Dr. Patel's rates are unreasonably excessive, and requests that they be reduced to $500.00 an hour.   Doc. No. 39.   SharkNinja opposes the request, arguing that Dr. Patel's stated rates are appropriate given his experience and specializations.   Doc. No. 40.   With leave of Court, the parties submitted supplemental briefing.   Doc. Nos. 51, 53; *see also* Doc. No. 41.   With the issues fully briefed, and for the reasons set forth below, Plaintiff's motion (Doc. No. 39) is due to be granted in part to the extent that the Court finds Dr. Patel's requested hourly rates unreasonably high, but denied to the extent that the Court finds Plaintiff's suggested $500.00/hour rate too low.

## II.   APPLICABLE LAW

Federal Rule of Civil Procedure 26(b)(4)(A) provides that "[a] party may depose any person who has been identified as an expert whose opinions may be presented at trial."   Fed. R. Civ. P. 26(b)(4)(A).   And Rule 26(b)(4)(E) states in relevant part that "[u]nless a manifest injustice would result, the court must require that the party seeking discovery . . . pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A) or (D)."   Fed. R. Civ. P. 26(b)(4)(e).   In determining what constitutes a reasonable fee, courts look at the

following factors: "(1) the prevailing rate for a comparable, available expert; (2) the witness's area of expertise; (3) the education and training required for the opinion sought; (4) the nature, quality, and complexity of the discovery responses provided; (5) the fee being charged to those who retained the expert; (6) the cost of living in the particular geographic area; (7) fees traditionally charged on related matters; and (8) any other factor likely to be of assistance to the court in balancing the interests implicated by Rule 26." *Gluck v. Geico Gen. Ins. Co.*, No. 8:19-cv-634-T-27AEP, 2020 WL 339593, at *1 (M.D. Fla. Jan. 21, 2020) (*citing Fell v. United States*, No. 3:15-cv-541/MCR/EMT, 2017 WL 2819040 (N.D. Fla. June 9, 2017), *report and recommendation adopted*, 2017 WL 2817881 (N.D. Fla. June 29, 2017)).

"As a general rule, the party seeking reimbursement of deposition fees bears the burden of proving reasonableness." *Aguila v. Amer. Inst. for Foreign Study, Inc. et al.*, No. 22-21146-Civ-WILLIAMS/TORRES, 2023 WL 5317831, at *3 (S.D. Fla. July 24, 2023) (*quoting Mannarino v. United States*, 218 F.R.D. 372, 374 (E.D.N.Y. 2003)). Ultimately, however, "a balance is necessary between enabling a party to attract competent experts and ensuring that the inquiring party 'will not be unfairly burdened by excessive ransoms which produce windfalls for [the other party's] experts.'" *Roca Labs, Inc. v. Consumer Op., Corp.*, No. 8:14-CV-2096-T-33EAJ, 2015 WL 12844308, at *2 (M.D. Fla. July 23, 2015) (*quoting Fraser v. AOL LLC*, No. 3:06–cv–954–J–20TEM, 2008 WL 312670, at * 1 (M.D. Fla. Feb. 4, 2008)).   Thus, "the

question of what fee is reasonable falls within the discretion of the Court." *Gluck*, 2020 WL 339593, at *1 (citation and quotation marks omitted).

### III.   ANALYSIS

The parties supplied briefing on five of the seven factors listed in *Gluck and Fell*: Dr. Patel's area of expertise; the fees traditionally charged by Dr. Patel on related matters; the nature, quality, and complexity of the discovery responses provided by Dr. Patel; the fees being charged to SharkNinja counsel; and the prevailing rate for a comparable expert to Dr. Patel.   Doc. Nos. 39, 40, 51, 53.   *See Fell*, 2017 WL 2819040, at *3 ("The list of factors that may be relevant can vary from case to case."). Applying the five *Gluck* and *Fell* factors briefed by the parties, and upon due consideration of the parties' briefs and submitted evidence, the Court concludes that an appropriate expert fee for Dr. Patel's deposition is $750.00 an hour.

With respect to Dr. Patel's area of expertise, there is no doubt that Dr. Patel is a well-educated and highly qualified plastic surgeon.   He is board-certified by the American Board of Plastic Surgery, graduated valedictorian of his undergraduate class at the University of Florida and top of his class at Yale University School of Management and Yale University School of Medicine, and completed hand and microsurgery fellowships at New York University Hospital and Mount Sinai Medical Center.   Doc. No. 39-2, at 7; Doc. No. 40-1.   He practices at Orlando Hand

Surgery Associates and Orlando Plastic Surgery Institute, has served on numerous advisory boards, committees, and public outreach programs, and is a prolific presenter/lecturer/publisher.   Doc. No. 40-1.   *See also* Doc. No. 51, p. 3 (Plaintiff conceding "Dr. Patel is undoubtedly a well-educated and qualified practicing doctor and surgeon").

Moreover, Dr. Patel is not a treating physician of Plaintiff, and as such, courts in this district generally afford slightly higher expert witness fees than those awarded to similarly situated treating physicians.   *See, e.g.*, *Cartrette v. T & J Transp., Inc.*, No. 3: 10–cv–277–J–25MCR, 2011 WL 899523, at * 1 (M.D. Fla. Mar. 15, 2011) (awarding lower rates to treating physicians that provide expert testimony because "in cases where the testimony is from a treating physician (as opposed to a specially retained expert), the Court should also consider the fact that, '[w]hen knowledge gained [through the doctor-patient] relationship bears on an issue in controversy, the treating physician assumes the obligation born by all citizens to give relevant testimony.'") (*citing Fraser v. AOL LLC*, No. 3:06–cv–954–J–20TEM, 2008 WL 312670, at *1 (M.D. Fla. Feb. 4, 2008)); *see also Roca Labs, Inc.*, 2015 WL 12844308, at *2 ("In the Eleventh Circuit, expert deposition fees may be reduced where the expert is a treating physician.").

However, the main area of dispute in this matter is whether Plaintiff suffers from complex regional pain syndrome.   *See* Doc. No. 39-2, at 19:5 (Dr. Patel stating

"the crux of this case is [complex regional pain syndrome]."). To that end, Dr. Patel conceded during his deposition that his experience and expertise in this area is not at the same level as his experience in plastic surgery. Doc. No. 39-2, at 14:9–23 (Dr. Patel confirming he is not board certified in physical medicine and rehabilitation, pain medicine, or interventional pain management); *Id*. at 15:2–21 (Dr. Patel stating none of his research or publication credits have directly related or were "designed to address" complex regional pain syndrome); *Id.* at 10:2-7 (Dr. Patel noting that since 2016 he has only diagnosed complex regional pain syndrome about 20 times). Thus, despite Dr. Patel's impressive credentials, his lack of heightened expertise in the particular field of complex regional pain syndrome weighs against his claim to his requested deposition rate. *See Dobson v. Matrixx Initiatives, Inc.*, No. 05–80984–CIV–RYSKAMP/VITUNAC, 2007 WL 842130, at *1 (S.D. Fla. Mar. 20, 2007) (reducing a causation and damages expert's fee because "[a]lthough [he] is board certified in neurology and psychiatry, he did not treat Plaintiff for psychiatric issues.").

Moreover, with regards to the second *Gluck* and *Fell* factor, the fees Dr. Patel traditionally charges on related matters, paramount to that consideration is Dr. Patel's limited experience as an expert witness. Dr. Patel has only appeared as an expert witness twice, with both instances occurring approximately four years prior to his deposition in this case. Doc. No. 39-2, at 5:6–6:8. This inexperience also

weighs against Dr. Patel's claim to his requested deposition rates.  *See Roca Labs, Inc.*, 2015 WL 12844308, at *3 (reducing by 50% the proposed rate of an expert witness who had not previously testified as an expert witness).

In addition, the third *Gluck* and *Fell* factor, the nature, quality, and complexity involved in Dr. Patel's work and discovery in this case, does not weigh in favor of the hourly rates he seeks.   His participation in this litigation to this point has been limited, apparently consisting of a single medical evaluation, his deposition testimony, and a four-page January 10, 2023 report with general medical findings about the residual functional capacity of Plaintiff's hand.   *See* Doc. No. 39-3.   And SharkNinja fails to produce sufficient evidence suggesting this products liability case is novel or complex.   *See Aguila*, 2023 WL 5317831, at *4 (reducing fees for several experts because "nothing about the deposition transcripts or the allegations in this [] dispute suggest novelty or unusual complexity.").

The fifth *Gluck* and *Fell* factor, the prevailing rate for comparable experts to Dr. Patel, also weighs against the rates requested by Dr. Patel and SharkNinja.   The market rate for board-certified non-treating physician experts like Dr. Patel is markedly lower than Dr. Patel's requested rate.   *See, e.g.*, *Roca Labs, Inc.*, 2015 WL 12844308, at *3 (reducing a board-certified non-treating physician's requested expert fee rate from $750.00 an hour to $500.00 an hour); *Barnes v. Hickox*, No. 3:08–cv–938–J–25JRK, 2009 WL 10670584, at *3 (M.D. Fla. Oct. 13, 2009) (reducing a

board-certified non-treating physician's requested expert fee from $1100.00 an hour to $975.00 an hour);   *Aguila*, 2023 WL 5317831, at *5 (reducing a board-certified non-treating physician's requested expert fee from $1100.00 an hour to $750.00 an hour); *Dobson*, 2007 WL 842130, at *2 (reducing a board-certified non-treating physician's requested expert fee from $1450.00 for the first hour and $1082.00 every subsequent hour to $500.00 an hour).   *See also* Doc. Nos. 51-1, 51-2 51-3 (listing $500.00/hour for non-treating board-certified expert surgeon in Jacksonville, Florida).   And SharkNinja provides no persuasive legal authority suggesting that the relevant market rate would support the rates requested by Dr. Patel.[1]

The only factor that appears to weigh in favor of Dr. Patel's higher rates is the fourth *Gluck* and *Fell* factor, the fees being charged to SharkNinja.   Apparently, SharkNinja has already agreed to pay Dr. Patel $800 an hour for phone conferences

---

[1] SharkNinja cites to two decisions in support of Dr. Patel's requested rates, but neither is persuasive.   The first is a Florida trial court decision that provides no explanation for the awarded rates, and does not address the eight factors used by courts in this Circuit.   *Reeves v. Kofler*, 2018 Fla. Cir. LEXIS 1452 (Fla. 4th Cir. Ct. July 30, 2018). The second is a decision from the District of Colorado, in which the court was greatly persuaded by the fact that the opposing party did not challenge the deposition fee and did not provide the court with any information about comparable rates charged by similar experts in that District.   *Burke v. State Farm Mut. Auto. Ins. Co.*, 2022 U.S. Dist. LEXIS 203530 (D. Colo. Nov. 8, 2022).   Here, in contrast, Plaintiff has objected to Dr. Patel's rates, and provided persuasive authority suggesting that a comparable rate for an expert of Dr. Patel's expertise is much lower than what he has requested.

- 9 -

and $3000 an hour for a minimum of three hours for his trial testimony.[2]   Doc. No.

53, at 3–4.   However, this is the only factor that supports pushing the high hourly

rates Dr. Patel seeks upon Plaintiff, and on balance, the factors that the parties have

discussed weigh in favor of a lower rate.   Nevertheless, as discussed above, the

$500.00 per hour rate suggested by Plaintiff is too low, and does not take into

account the fact that Dr. Patel is not a treating physician in this case.   Thus, in the

Court's discretion, the Court concludes that an hourly rate of $750.00 an hour is

appropriate in light of the evidence provided and the market rates for similarly

qualified board-certified physicians in this judicial District and Circuit.

## IV.   CONCLUSION.

For the reasons stated herein, Plaintiff's Motion to Establish a Reasonable Fee

(Doc. No. 39) is **GRANTED in part and DENIED in part**. It is **ORDERED** that

Plaintiff shall compensate Dr. Patel for two hours and eight minutes of deposition

---

[2] To that end, SharkNinja also argues Dr. Patel's requested rate is "reasonable in light of the fees of the other M.D.-credentialed medical experts in this case."   Doc. No. 40, at 4 (noting SharkNinja and Plaintiff agreed to pay $1350 an hour and $1750 an hour, respectively, for the services of their life care planner experts).   SharkNinja provides no legal support for the conclusion that what a party agrees to pay its own experts in different contexts has any bearing on what this court should consider a reasonable fee under Rule 26 in this specific context, and the Court has not independently found any such legal support for that conclusion.   The Court thus finds this argument unpersuasive.

testimony at $750.00 per hour for a total of $1687.50 ($750.00 per hour for two hours

and $187.50 for a quarter hour of additional time).

     **DONE** and **ORDERED** in Orlando, Florida on September 14, 2023.

LESLIE HOFFMAN PRICE
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties